Attachment # 9-C-1

```
==========================================================================
                   S t a n d a r d   S u p p l e m e n t   R e p o r t
==========================================================================
Reported Date: 05/01/13  Time: 20:45           Case: 13-035649 (033)  Page: 1
 e: 43A-5-207 SS      Crime: MTL HLTH INTV Class:
  urrence Date: 05/01/13-          Day: WEDNESDAY-           Time: 20:45-
Status: AS  ASSIGNED                Closing Officer:
Location: 1421 NW. 99TH ST., OK                                    RD:  494

========================= NARRATIVE ====================
SUBJECT: Interview with Jean Griffin

RE:  In-Custody death of Clifton Armstrong
```

**DEFENDANT'S EXHIBIT 6**

Body of report:

I interviewed Jean Griffin in the Homicide Office on 05-02-13, at 0100 hours. Griffin is the grandmother of Clifton Armstrong, and this interview was recorded on DVD. I collected her contact information and asked her to tell me about this incident.

Griffin told me she was returning home from church when she received a telephone call from her daughter, Valencia Maiden, asking that Griffin come by Maiden's residence and take Armstrong to the hospital. When Griffin arrived at Maiden's residence, Armstrong was seated on the couch inside the residence, an Griffin told Armstrong to come with her to the hospital. Armstrong agreed, and asked who would give him the ride. Griffin told Armstrong she would provide th ride, and Armstrong replied, "I don't need no psychiatrist," but then agreed t go with Griffin. According to Griffin, Armstrong changed his mind several times, and then stated he would only go if his mother would accompany him. Griffin instructed Maiden to call her place of employment and tell them she  ld not be coming in, which Maiden did.

Armstrong waffled back and forth between agreeing to, and then refusing to go to the hospital, but finally ended up outside when one of the officers told hi ne would either go with his mother, or with them. Griffin stated, "And that's when everything went crazy." Griffin stated she was inside her car, but looked around and found Armstrong had removed all his clothing, and was jumping up an down and screaming. Griffin told me the officers tried to restrain Armstrong, but, "he was just flipping them around like little babies." Griffin and Maiden assisted the officers by each grabbing one of Armstrong's legs. Additional officers arrived, and were able to get Armstrong restrained. The officers told Griffin and Maiden to go inside the residence. Griffin told me she could see the officers performing CPR on Armstrong before she went inside the residence.

Griffin described further how the officers applied a hobble restraint to Armstrong, and stated it took some time because Armstrong was struggling. Griffin then said, "I didn't see anything they done wrong, they was just tryin( to help him."

I recapped the information Griffin had provided, and she described how Armstrong was seated on the ground, talking back and forth between the initial two officers. Griffin stated she looked around in time to see Armstrong throw his water bottle in the air and disrobe. Griffin stated Armstrong was talking crazy, and I asked her what he had said. Griffin quoted Armstrong as saying, 'The police want me to put my pee pee in their mouth." Griffin stated she

```
==========================================================================
               S t a n d a r d   T r a i l e r  -  F i r s t   P a g e
==========================================================================
P  orting Officer: EASLEY, LYNDE   Number: 000815  Date: 05/07/13  Time: 11:55
        Typed by: LEASLEY          Number: 815     Date: 05/07/13  Time: 11:56
Approving Officer: NEAL, RUSSELL   Number: 000868  Date: 07/22/13  Time: 12:53
```

```
==============================================================================
                      S t a n d a r d   C o n t i n u a t i o n   P a g e
==============================================================================
Reported Date: 05/01/13  Time: 20:45           Case: 13-035649 (033)  Page: 2
C̃ỡe: 43A-5-207 SS        Crime: MTL HLTH INTV Class:
```

laughed at this, but Armstrong went on the tell Griffin "They hit me." Armstrong told me the officers had not touched Armstrong at this point. According to Griffin, Armstrong also told her, "They gonna kill me, somebody gonna kill me, they after me." The officers told Armstrong they had not touched him, and Griffin confirmed the officers had not. Griffin stated the officers told Armstrong they only wanted to take him to the hospital, but, "He wasn't hearing none of that."

Griffin explained they attempted to talk Armstrong into getting in her vehicle because it is a two-door, and Armstrong would be better confined. Armstrong was not agreeable to this, and wanted to go to the hospital in his mother's car. Griffin stated this was unacceptable to both she and Maiden.

I asked at what point did the officers first have to put hands on Armstrong. Griffin stated it was after Armstrong had disrobed. Griffin again explained that she and Maiden held Armstrong's legs, and felt his muscles. I asked Griffin if it seemed Armstrong was stronger than a person would normally be, and she agreed he was. Griffin voluntarily stated, "He was moving around a lot, but like I said, I didn't see the officers do anything they shouldn't have." I clarified this by asking if any officer tried to hit, punch, or kick Armstrong, and Griffin stated she did not see this. I also asked if any officer used a Taser or baton, and Griffin stated these items were not used, and told me how one officer held a flashlight under his arm, but the flashlight was not used as a weapon either. I asked how much time elapsed between Armstrong being handcuffed and the officers beginning CPR, and Griffin estimated this time to be three or four minutes.

I explained to Griffin that usually an officer will announce, "Taser, Taser, Taser" before deploying this weapon, and I asked Griffin if she heard this, or any other variation. Griffin stated she did not hear this. Griffin stated the officers did not try to do anything besides hold Armstrong, and stated, "They had their hands full." I asked Griffin if she had ever seen this type of behavior from Armstrong, and she stated she had not.

I turned the interview to whether Griffin had ever seen Armstrong under the influence of illegal narcotics. She stated she had not seen this, or seen Armstrong this far out of touch with reality. She stated Armstrong would bounce back and forth between lucid conversation, and delusions.

Griffin told me Armstrong had been released from jail recently, and Maiden had commented to how he looked as opposed to when he was arrested. Griffin stated Armstrong was "just skin and bones" when he was arrested. With no question or prompting from me, Griffin told me how Maiden called her Monday evening (04-29-13) and telling of how Armstrong was "flipping out." Maiden called again Tuesday morning and reported that Armstrong was acting normally, but called again Tuesday evening to say Armstrong was "talking that stuff again."

I began wrapping up the interview and asked Griffin if she had questions for me. She stated it seemed as if I was questioning her as though she had done something wrong. I explained I understood and Griffin asked if this incident was considered a homicide. I explained this was to be determined by the Medical

```
==============================================================================
                   S t a n d a r d   T r a i l e r  -  C o n t i n u a t i o n
==============================================================================
Reporting Officer: EASLEY, LYNDE   Number: 000815  Date: 05/07/13  Time: 11:55
      Typed by:    LEASLEY         Number: 815     Date: 05/07/13  Time: 11:56
Approving Officer: NEAL, RUSSELL   Number: 000868  Date: 07/22/13  Time: 12:53
```

```
===============================================================================
                    S t a n d a r d   C o n t i n u a t i o n   P a g e
===============================================================================
Reported Date: 05/01/13  Time: 20:45           Case: 13-035649 (033)  Page: 3
C..?e: 43A-5-207 SS       Crime: MTL HLTH INTV Class:
```

Examiner's Office and gave Griffin the definition of homicide as outlined by stated statute. Griffin stated, "We didn't do none of that!" I realized Griff was in fear of being charged in connection with Armstrong's death, and told h nobody was in any trouble for their actions.

I provided Griffin with one of my business cards and ended the interview.

Detective Lyndell Easley #815
OCPD Homicide Unit

```
===============================================================================
              S t a n d a r d   T r a i l e r  -  C o n t i n u a t i o n
===============================================================================
R- orting Officer: EASLEY, LYNDE  Number: 000815  Date: 05/07/13  Time: 11:55
         Typed by: LEASLEY         Number: 815     Date: 05/07/13  Time: 11:56
Approving Officer: NEAL, RUSSELL   Number: 000868  Date: 07/22/13  Time: 12:53
```